United States District Court
Middle District of Florida
Jacksonville Division

**CHRISTOPHER KENNETH DOAK,**

*Plaintiff,*

v.                                                                    **NO. 3:21-cv-758-MMH-PDB**

**ACTING COMMISSIONER OF SOCIAL
SECURITY,**

*Defendant.*

---

## Report & Recommendation

Christopher Kenneth Doak challenges a final decision of the Acting Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Doc. 1. The decision is by an administrative law judge (ALJ). Tr. 12–34. The Acting Commissioner has filed an 899-page record, Doc. 21 (Tr. 1–899), and each side has filed a brief, Docs. 25, 30. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

Doak makes two arguments. First, he argues the residual functional capacity (RFC) is not supported by substantial evidence. Doc. 25 at 8–11. Second, he argues the ALJ improperly evaluated the medical opinions of Dr. Alex Arce, his primary care physician. Doc. 11–14.

## I.    Background

Doak was born in 1966, Tr. 273, 276, 278, and worked as a cook, roofer, and stocker, Tr. 343, before ceasing work on April 15, 2017, Tr. 342. The Social Security Administration (SSA) denied prior applications on September 18,

2019. Tr. 70–87. He applied again on December 6, 2019, Tr. 276–86, alleging he had become disabled on September 19, 2019, Tr. 276, 278, 341. He proceeded through the administrative process, failing at each level. Tr. 1–6, 12–34, 93–130, 135–70. This action followed. Doc. 1.

## II.   ALJ's Decision

In the decision under review, the ALJ proceeded through the five-step sequential process.[1]

At step one, the ALJ found Doak has not engaged in substantial gainful activity since September 19, 2019. Tr. 17.

At step two, the ALJ found Doak has severe impairments of "other osteoarthritis, chronic obstructive pulmonary disease (COPD), obesity, post-traumatic stress disorder (PTSD), [and] depression-bipolar[.]" Tr. 18 (some capitalization omitted).

At step three, the ALJ found the severity of Doak's impairments—including his substance use—meets the criteria of section 12.04 (depressive, bipolar, and related disorders) of the Listing of Impairments. Tr. 18–19; *see also* 20 C.F.R. Part 404, Subpart P, App'x 1 (Listings). The ALJ further found

---

[1]To decide whether a person is disabled, the SSA uses a five-step sequential process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ asks whether the claimant is engaged in "substantial gainful activity." *Id.* At step two, the ALJ asks whether the claimant has a severe impairment or combination of impairments. *Id.* At step three, the ALJ asks whether the claimant has an impairment or combination of impairments meeting or medically equaling the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ asks whether the claimant can perform any of his "past relevant work" considering his RFC. *Id.* And at step five, the ALJ asks whether there are a significant number of jobs in the national economy he can perform considering his RFC, age, education, and work experience. *Id.* If the ALJ finds disability or no disability at a step, the ALJ will "not go on to the next step." *Id.*

that if Doak ceased his substance use, he would still have a severe impairment or combination of impairments, Tr. 19, but his impairment or combination of impairments would not meet or medically equal the severity of an impairment in the listing, Tr. 19–21.[2]

The ALJ found that if Doak ceased his substance use, he would have the following RFC:

> [He can] perform light work as defined in 20 [C.F.R §§] 404.1567(b) and 416.967(b) except frequent use of the right hand to push and pull. [He] can never climb ladders, can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. [He] must avoid concentrated exposure to temperature extremes. [He] must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards, including unprotected heights and moving machinery. [He] can only perform simple, routine tasks on a sustained basis and can only occasionally interact with the general public. [He] must avoid fast-paced production and quota requirements and must avoid abrupt changes. He can only handle gradual changes.

Tr. 21–22. The ALJ relied on evidence described below. Tr. 22–27. He based the balance limitation on Social Security Ruling (SSR) 19-2p, Tr. 22–23, in which the SSA explains obesity can cause limitations in both "exertional functions," including walking, and "nonexertional functions," including balancing, SSR 19-2p, 84 Fed. Reg. 97, 22924.

Among other evidence, the ALJ summarized Dr. Arce's opinions:

---

[2]The Social Security Act precludes the award of benefits when substance use is a contributing factor material to the disability finding. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935. If the ALJ finds a disability and that medical evidence of substance use exists, the ALJ must determine whether the substance use is a material contributing factor and evaluate (1) which limitations would remain if the claimant stopped using the substance and (2) whether those limitations would be disabling. *See* 20 C.F.R. §§ 404.1535(a) & (b)(2), 416.935(a) & (b)(2). Here, Doak's substance use and the ALJ's related findings are not at issue.

Alex Arce, D.O., treating provider, opined in January 2020 that [Doak] would be off task more than twenty-five percent of a typical workday; would likely be absent from work four or more days per month; could lift and carry up to twenty pounds occasionally and up to ten pounds frequently; could sit for eight hour[s] total in a workday and stand or walk for two hours total in a workday; and could never operate a vehicle (Exhibit B10F/2-5). In August 2020, Dr. Arce affirmed his January 2020 opinion, but noted that [Doak] could rarely lift and carry twenty pounds; could only occasionally perform reaching, handling, fingering, feeling, pushing and pulling bilaterally; could rarely stoop, kneel, and crouch and never climb stairs, ramps, ladders, or scaffolds, balance, crawl, and rotate his head or neck; and should avoid all exposure to unprotected heights, moving mechanical parts, operating a vehicle, humidity and wetness, pulmonary irritants, temperature extremes, and vibrations (Exhibit B15F/7-10).

Tr. 26; *see also* Tr. 680–84, 796–805 (opinions).

The ALJ explained why the opinions were unpersuasive and inconsistent with the record:

The undersigned has considered these opinions and finds [they are] generally not persuasive. The opinions are supported by objective evidence in the form of diagnostic evaluation completed by the provider (Exhibit B3F/2-7). However, the undersigned finds that the opinions [are] mostly not consistent with the record as a whole, which shows that [Doak] was not as limited posturally and environmentally as the provider opined. Notably, the claimant alleged that he has limitations in performing exertional and postural maneuvers. He indicated that he experiences shortness of breath, but stopped using inhalers in April 2020 due to financial reasons (Exhibit B1E/6-7; Hearing Testimony). Upon examination, [Doak] endorsed symptoms of shortness of breath and wheezing. However, the treatment record noted that pulmonary function testing showed moderate obstruction with significant bronchodilator response. Additional respiratory testing upon examination showed no wheezing and normal breath sounds (Exhibit B6F/2-7). [Doak] was noted to have somewhat abnormal gait with decreased sensation in his right hand. However, he had good range of motion and strength in his upper and lower extremities (Exhibit B2F/2-6). Consultative examination noted that the claimant had moderate impairment with fine and gross dexterities in his right upper extremity, but generally had good findings otherwise, including negative straight

4

leg raise testing and intact sensation (Exhibit B7F/4-6). As such, the
above opinion[s] [are] generally not persuasive.

Tr. 26–27.

At step four, the ALJ found Doak cannot perform his past relevant work.
Tr. 27.

At step five, the ALJ relied on testimony from a vocational expert (VE)
and found that if Doak stops his substance use, he could perform jobs existing
in a significant number in the national economy. Tr. 27.

The ALJ thus found no disability. Tr. 27.

## III.   Standard of Review

A court's review of the Acting Commissioner's decision is limited to
whether substantial evidence supports the factual findings and whether the
correct legal standards were applied. 42 U.S.C. § 405(g); *see also* 42 U.S.C.
§ 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221
(11th Cir. 2002).

Substantial evidence means "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,
139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for
such evidentiary sufficiency is not high." *Id.* Under this standard of review, a
court may not reweigh the evidence or substitute its judgment for that of the
Acting Commissioner. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## IV.   Law & Analysis

### A.   *The RFC is supported by substantial evidence.*

Doak argues the RFC is not supported by substantial evidence. Doc. 25 at 8–11.

A claimant's RFC is the most he can still do despite the physical and mental limitations resulting from his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ is responsible for assessing medical and other evidence and determining a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c).

Contrary to Doak's argument, substantial evidence supports the RFC. The evidence includes musculoskeletal testing showing he has normal tone and motor strength, normal movement of all extremities, and normal gait and station; testing showing he has normal breath sounds and no wheezing; records showing his depression improved with medication with no adverse reaction; psychiatric testing with findings within normal limits except only fair memory; a report indicating he had no difficulty getting on and off the exam-room table and chair; a report indicating no pain on back palpation; a self-report that he was "doing well" on his medications; his denial of shortness of breath and wheezing at an appointment; treatment notes indicating his COPD was stable; only mild abnormal findings on an echocardiogram; "appropriate" respiratory findings and good neurological findings; a chest X-ray showing clear lungs and no active disease; testing showing good range of motion and strength in upper and lower extremities; and opinions from state-agency medical consultants stating he can perform light exertional work with postural limitations. *See* Tr. 22–25 (ALJ's decision articulating substantial evidence); Tr. 103–07, 122–26, 144–48, 162–66, 457–60, 653–58, 669–71, 744–52, 754, 808, 811, 820–21, 888

(supporting records). This constitutes substantial evidence supporting the RFC, even if other evidence cuts against it.

Doak contends that because balance is necessary for walking and standing, the ALJ erred by determining he can perform light work—which involves substantial walking or standing[3]—while also determining he can only occasionally balance. Doc. 25 at 8–11.

Doak relies on *Selected Characteristics of Occupations* and SSR 96-9p. Doc. 25 at 9. In *Selected Characteristics of Occupations*, the SSA defines "balancing" as "maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces; or maintaining body equilibrium when performing gymnastic feats." *Selected Characteristics of Occupations*, Appendix C, at C-3 (capitalization omitted). SSR 96-9p provides:

> Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. An exertional limitation is an impairment-caused limitation of any one of these activities.
>
> Nonexertional capacity considers any work-related limitations and restrictions that are not exertional. Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions are also considered to be nonexertional.
>
> …

---

[3]"Light work … requires a good deal of walking or standing … . To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

> Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. In the SCO, "balancing" means maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces. If an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base. However, if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base. Consultation with a vocational resource may be appropriate in some cases.

SSR 96-9P, 1996 WL 374185, at *5, *7 (July 2, 1996); *see also* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (differentiating between walking or standing and balancing when defining "nonexertional impairment" by explaining that an impairment affecting the ability to walk or stand is exertional and an impairment affecting the ability to balance is nonexertional).

Under these authorities, walking or standing and balancing are distinct, and balancing is discussed in the context of walking or standing "on narrow, slippery, or erratically moving surfaces," not walking or standing generally. Moreover, "balance" means different things in different contexts, and balancing can be an independent act rather than an act incident to walking or standing. *See, e.g.*, Merriam-Webster, *Balance*, https://www.merriam-webster.com/dictionary/balance (last visited Aug. 5, 2022) (providing multiple definitions for "balance," including the intransitive verb meaning "to become balanced or established in balance," for example, "*balancing* on one foot").

Here, the ALJ explicitly observed that Doak can walk without assistance and included a balance limitation not because of difficulty walking or standing

but because of Doak's obesity. *See* Tr. 22–23 (observing Doak has a BMI of 33.7, explaining that BMI makes Doak obese, and stating that obesity can cause limitations in function, including limitations in balancing). The ALJ did not cite or summarize any evidence of Doak losing balance while walking or standing, and Doak points to none. Read in context, the ALJ clearly intended a balance limitation specific to balancing as an independent act.

Doak complains the ALJ never questioned the VE about "a reduction in the occupational base of light jobs due to [his] limitation to occasional balancing." Doc. 25 at 10. The ALJ, however, explicitly asked the VE about jobs for a hypothetical person capable of light work with specific additional limitations, including that he could "only occasionally" balance. Tr. 63.

Doak relies on *Allen v. Sullivan*, 880 F.2d 1200 (11th Cir. 1989), and *Conners v. Astrue*, No. 8:07-cv-1300-T-TGW, 2008 WL 4276602 (M.D. Fla. Sept. 17, 2008). Doc. 25 at 10–11. In those cases, unlike here, the ALJ relied on the Medical Vocation Guidelines (known as "the grids") and not a VE's testimony about whether nonexertional limitations compromised the availability of jobs. *See Allen*, 880 F.2d at 1202; *Conners*, 2008 WL 4276602, at *3. The courts held that without such testimony, the finding that jobs were available was reversible error. *See Allen*, 880 F.2d at 1202; *Conners*, 2008 WL 4276602, at *3. Doak argues the holdings apply here because the ALJ failed to question the VE about a reduction in the occupational base. Doc. 25 at 10–11. But the ALJ did so question the VE. Thus, *Allen* and *Conners* are inapplicable.

Doak contends, "It is clearly an inconsistent conclusion that [he] can perform light work *and* had such reduced ability to balance," cites SSR 00-4p, and insists remand is necessary because the "ALJ failed to address this apparent conflict." Doc. 25 at 11. SSR 00-4p provides, "When there is an

apparent unresolved conflict between VE or [vocational specialist] evidence and the [*Dictionary of Occupational Titles*], the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or [vocational specialist] evidence to support a determination or decision about whether the claimant is disabled." 65 Fed. Reg. 75759. Here, the ALJ's finding that Doak can perform light work and further finding he can only occasionally balance are not apparently inconsistent. The ALJ therefore did not have to elicit any explanation.

**B.** ***The ALJ properly evaluated Dr. Arce's opinions.***

Doak argues the ALJ improperly evaluated Dr. Arce's medical opinions. Doc. 11–14.

The SSA will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Instead, the SSA will evaluate the persuasiveness of a medical opinion from a medical source considering (1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(a) & (c)(1)–(5), 416.920c(a) & (c)(1)–(5). Of these factors, supportability and consistency "are the most important factors" in determining the persuasiveness of a medical source's medical opinion, and the ALJ must explain how he considered them. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

10

An ALJ need not address every piece of evidence in the decision as long as the decision "is not a broad rejection" and remains sufficient for the court to conclude the ALJ considered the claimant's condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)) (internal quotation marks omitted).

Contrary to Doak's argument, the ALJ properly evaluated Dr. Arce's medical opinions. Consistent with 20 C.F.R. §§ 404.1520c and 416.920c, the ALJ evaluated the opinions for supportability and consistency. *See* Tr. 26–27 (ALJ's decision discussing Dr. Arce's opinions). Specifically, the ALJ found the opinions are supported by Dr. Arce's own diagnostic evaluation but "mostly not consistent with the record as a whole." Tr. 26. After summarizing the opinions, he articulated specific inconsistencies. Tr. 26–27.

Doak contends that because the regulations require an ALJ to articulate how he considered supportability and consistency when evaluating a medical opinion, the ALJ erred by finding Dr. Arce's opinions "generally not persuasive" without discussing findings related to off-task behavior, attendance, and concentration. Doc. 25 at 11–14. The ALJ, however, did not have to discuss every finding. *See Dyer*, 395 F.3d at 1211 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]"). Along with Dr. Arce's physical-limitation findings, the ALJ acknowledged the findings that Doak would be off-task twenty-five percent of a typical workday and would likely be absent at least four days a month. Tr. 26. He then considered the supportability and consistency of Dr. Arce's opinions as a whole and explained his evaluation of those factors, as required by §§ 404.1520c and 416.920c. *See* Tr. 26–27 (ALJ's evaluation of Dr. Arce's

opinions). The ALJ did not have to explain his consideration of the supportability and consistency of each of Dr. Arce's specific findings.

Doak continues, "The ALJ's analysis is particularly bothersome here as the ALJ determined that Dr. Arce's opinions were supported by his treatment records but then fails to explain why these disabling limitations were not adopted." Doc. 25 at 14. But the ALJ's reasoning is clear; as he explained, he generally found Dr. Arce's opinions inconsistent with the rest of the record. *See* Tr. 26. Again, he did not have to evaluate each specific finding for consistency with the record or explain why he declined to adopt a specific finding.

## V.    Recommendation

Because substantial evidence supports the findings and the ALJ applied the correct legal standards, the undersigned recommends **affirming** the Acting Commissioner's decision and **directing** the clerk to enter judgment for the Acting Commissioner and against Christopher Kenneth Doak and close the file.

## VI.    Deadline for Objections and Responses to Objections

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters review by the district judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific

objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th
Cir. R. 3-1.

   **Entered** in Jacksonville, Florida, on August 5, 2022.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:      The Honorable Marcia Morales Howard
        Counsel of record